Milton BATISTE, Plaintiff-Appellant,

v.

Paul V. BURKE, Defendant-Appellee.

No. 84–3292
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1984.

Joseph W. Thomas, New Orleans, La., for plaintiff-appellant.

John Volz, U.S. Atty., Ruth Morris Force, Asst. U.S. Atty., McGlinchey, Stafford, Mintz & Cellini, New Orleans, La., Eric Jay Scharf, Washington, D.C., for defendant-appellee.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Milton Batiste brings this action against Paul V. Burke, the Sectional Center Manager/Postmaster in the New Orleans Branch of the United States Postal Service, complaining that Burke's decision not to hire Batiste violated his constitutional right to due process. The trial court granted summary judgment in favor of Burke on the ground that he is entitled to official immunity from suit for the conduct in question. We affirm.

In April 1982, Batiste approached the United States Postal Service in search of employment. He was interviewed for the position of mail clerk but was told that the Postal Service would notify him at a later date as to the status of his application. When, several months later, Batiste had not been contacted, he returned to inquire after his application. He was told, apparently by Burke, that he would not be hired because an official record supplied by the city of New Orleans disclosed that Batiste had been arrested four times.

Denying the accuracy of the report, Batiste brought this action seeking $100,000 in damages allegedly suffered as a result of Burke's decision. Batiste alleged that Burke's reliance on the arrest record in denying Batiste employment without first giving him an "opportunity to clear his name" or to respond to the record deprived him of liberty without due process of law under the Fifth Amendment. Batiste prayed for damages for this deprivation under the theory first announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and later applied to the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

Burke, before answering, moved the court to dismiss the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Burke urged two grounds for dismissal: first, that Batiste's complaint did not state a claim under the *Bivens* doctrine and, second, that Burke was entitled to the affirmative defense of qualified official immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[1] Attached to the mo-

---

1. In the light of Fed.R.Civ.P. 8(c), the propriety of raising affirmative defenses by motion is in some doubt. *See e.g., Olan Mills, Inc. v. Enterprise Pub. Co.*, 210 F.2d 895, 897 (5th Cir.1954)

tion was a photocopied excerpt from the Personnel Operations Handbook of the Postal Service which describes the duties and authority of the Postmaster in making employment decisions. Burke presented this excerpt as evidence that he had acted within the scope of his discretionary authority, a precondition for entitlement to the official immunity defense where the defendant official "exercise[s] an exceedingly broad range of discretion" in discharging his duties. *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir.1980) (comparing the showing required of a prison official who, generally, wields broad discretion with that required of a police officer who, generally, has only narrow discretion). Given this, Burke argued, he was entitled to immunity because his actions violated no "clearly established statutory or constitutional [right] of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

(defense of privilege could not be raised by motion to dismiss where factual issue may still be disputed). However, there is ample authority for raising affirmative defenses by summary judgment motion in the context of the official immunity defense, *see Barker v. Norman*, 651 F.2d 1107, 1120 n. 16 (5th Cir.1981), and in other contexts as well. *See Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95–6 (5th Cir.1976) (affirmative defense may be raised by summary judgment motion when the motion is the initial pleading tendered by defendants); *United States v. M/V Big Sam*, 454 F.Supp. 1144, 1151 (E.D.La.1978) (res judicata may be raised by motion to dismiss); and, generally, C. Wright and A. Miller, Federal Practice and Procedure § 1277 nn. 13, 19, 21 and cases cited therein. This practice has been approved even where a motion to dismiss is converted, under Fed.R. Civ.P. 12(b), to a motion for summary judgment. *Miller v. Shell Oil Co.*, 345 F.2d 891 (10th Cir.1965). Batiste neither objected below nor raised the issue before us. Objection to raising a defense by motion may be waived if the non-movant responds to the merits of the motion. *Dow v. Shoe Corp. of America*, 276 F.2d 165 (7th Cir.1960). We, therefore, consider Burke's defense to have been properly before us.

**2.** This was properly done by the authority of Fed.R.Civ.P. 12(b). We note, however, that the record does not disclose compliance with the "reasonable opportunity" requirement of that rule. *See also* Fed.R.Civ.P. 56(c). To be sure,

Batiste responded to the motion, arguing as to the affirmative defense of immunity only that his constitutional rights were, in fact, clearly established. He did not dispute the fact that Burke acted within the scope of his discretion.

■ The trial court granted Burke's motion, converting it *sua sponte* to a motion for summary judgment under Fed.R. Civ.P. 56 since the court considered material outside the pleadings, namely, the Personnel Handbook excerpt, in arriving at its decision.[2] The court found, apparently, that there was no material factual issue as to whether Burke acted within the scope of his discretion and concluded that the constitutional right to which Batiste had laid claim was not clearly established under *Harlow.*

■ On appeal Batiste seeks reversal of the trial court's judgment on the same ground on which he opposed Burke's motion, i.e., that his constitutional right (pre-

Rules 12(b) and 56(c), as interpreted in this circuit, devolve upon the trial court a duty to comply strictly with the notice and "reasonable opportunity" requirements. *Davis v. Howard*, 561 F.2d 565, 570–72 (5th Cir.1977). However, Batiste neither objected below nor raised before us the spectre of an inadequate hearing. Nor has Batiste at any time contested the trial court's conclusion that Burke acted within the scope of his discretion, the conclusion which required the court to convert the Rule 12(b)(6) motion to a Rule 56 motion. We assume that Batiste chose not to raise this infirmity for good reason, namely, that the underlying issue is not disputed. We decline to raise it ourselves *sua sponte*, a procedure reserved for exceptional circumstances. *McGee v. Estelle*, 722 F.2d 1206, 1213 n. 23 (5th Cir.1984) ("[W]e have repeatedly refused to examine issues not raised in the appellate briefs absent the possibility of injustice so grave as to warrant disregard of usual procedural rules." Id.). *Cf. Sibbach v. Wilson*, 312 U.S. 1, 16, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1940) (district court's action, assigned as error neither in court of appeals nor Supreme Court, "was plain error of such a fundamental nature" that Court felt compelled to notice it). Such procedural infirmities may be waived. *Hickey v. Arkla Industries*, 615 F.2d 239, 240 n. 2 (5th Cir. 1980) (dictum). We treat the trial court's consideration of the unauthenticated document attached to Burke's motion, often a procedural error, *Davis v. Howard*, 561 F.2d at 569–70, in the same fashion.

sumably, the right to be given a hearing before being refused employment based on an arrest record) was clearly established such that Burke should be charged with knowledge of it. One facet of Batiste's argument reiterates the allegation that Burke knew or had reason to know that the arrest record was false. The issue, thus framed, was one of law, clearly within the province of summary judgment procedure. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. If the trial court found that the law was not clearly established at the time of the alleged violation, discovery need not have begun and summary judgment properly issued. *Id.*[3]

Batiste cites only one case for the proposition that an official's reliance on arrest records in refusing to employ the arrestee violates due process when the arrestee is not given a prior hearing. In *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), the Court held that a Civil Service Commission regulation barring aliens from employment in the federal civil service violated the Fifth Amendment by depriving non-citizens of liberty without due process. The Court held that the national interests allegedly justifying the regulation were not the proper concerns of the Civil Service Commission (as opposed to Congress or the Executive) even if they outweighed "the impact of ... rule on the millions of lawfully admitted resident aliens." 426 U.S. at 116, 96 S.Ct. at 1911.

█ Whatever the intricacies of *Hampton's* effects on the substantive constitutional relationships before us, we think it is beyond cavil that *Hampton* fails to announce "clear" limits on the aspects of personal history and employability that a federal official may consider in making hiring decisions. Much less, we think, does *Hampton* address the use of arrest records

in such decisions. *Hampton* involved the Commission's use of a written regulation which foreclosed millions of aliens from federal employment. Although, in his brief, Batiste conclusorily attempts to raise Burke's decision to the level of a "broad-based" hiring policy, he failed to allege or argue below that such a policy exists. Nor did he refer us to any such written regulation or even assert that a similar oral policy or practice could have been proved had he been permitted to adduce evidence. Moreover, even if such a policy were shown to exist, Batiste has utterly failed to elucidate, nor can we discover, a sufficient similarity either in source or scope between an arrest-record policy and a regulation barring millions of noncitizens from federal employment. Finally, Batiste could not point us to any national or individual interest implicated herein even approaching in magnitude those which the *Hampton* court balanced. *See* 426 U.S. at 102–104, 96 S.Ct. at 1905 (balancing individual interest in not being excluded from "employment in a major sector of the economy," when such individuals are already handicapped by language and cultural barriers, against national interests in employee loyalty and encouragement of naturalization). In short, *Hampton* establishes no clear "relevant legal standard" which could have guided Burke in his evaluation of would-be employees. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739.

█ Burke himself has cited precedent which addresses the use of arrest records in employment evaluations. Far from clearly establishing the right Batiste claims, the cases permit a significant degree of play in the considerations which may validly inform an employer's decision. In *Webster v. Redmond,* 599 F.2d 793 (7th Cir.1979), the most closely analogous case,

---

**3.** This circuit has restated the *Harlow* test as follows:

    (1) Was the law clearly established at the time [of the alleged violation]? If the answer to this threshold question is no, the official is immune.

    (2) If the answer is yes, the immunity defense ordinarily should fail unless the official

claims extraordinary circumstances and can prove that he neither knew nor should have known that his acts invaded settled legal rights.

*Trejo v. Perez,* 693 F.2d 482, 485 (5th Cir.1982) (footnote omitted). Since we, like the trial court, answer the threshold question in the negative, we need not address the second question.

the court held that a state school board did not impair a teacher's liberty interest when it considered his prior arrest and circumstances surrounding it in declining to promote him to principal. The board was free to consider the arrest without giving the teacher a hearing because the teacher continued to be free to seek other forms of employment and because his reputation had not been damaged since the board had not publicly revealed the reasons for declining to promote him. In so holding, the court drew on the liberty interest analysis employed in *Board of Regents v. Roth*[4] and *Bishop v. Wood*.[5] Although *Webster, Roth* and *Bishop* were all decided under the Fourteenth Amendment rather than the Fifth Amendment, it is clear that both Amendments require the same analysis, *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976), and that Fifth Amendment scrutiny is, if anything, less demanding than that under the Fourteenth Amendment. *Hampton*, 426 U.S. at 100, 96 S.Ct. at 1903.

We can only conclude that if an employee may be properly refused a promotion on the basis of the circumstances surrounding an arrest as well as on the basis of the arrest itself, it follows that a mere applicant may properly be refused initial employment on the basis of a record which showed four arrests.[6] However, regardless of our view of the constitutional propriety of Burke's actions, no defensible argument can be made that the cases announce a "clearly established constitutional or statutory right" such as that claimed by Batiste.[7]

The fundamental reason the *Harlow* Court abandoned the subjective prong of the official immunity defense was to "avoid excessive disruption of government and [to] permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2739. In so doing, the Court reiterated its own admonition that "insubstantial lawsuits undermine the effectiveness of government

4. 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth* a teacher who was told without explanation that he would not be rehired did not suffer violation of a protectable liberty interest where he remained free to seek other employment.

5. 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Bishop* a policeman who was fired without a hearing and was told privately the reasons for the discharge did not suffer a due process deprivation, even if the reasons were actually inaccurate. The Court stated, "[t]he Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." *Id.* at 350, 96 S.Ct. at 2080. Neither, the court held, could privately communicated reasons form the basis of a due process claim, even where they were repeated in a judicial proceeding. *Id.* at 348, 96 S.Ct. at 2079.

6. In his complaint, Batiste alleged that Burke knew or had reason to know that the arrest record was false. However, Batiste nowhere contends that Burke did not actually rely on the record. Indeed, he implicitly concedes as much in his framing of the issues presented on appeal and in his arguments before us. We assume Batiste does not wish to suggest that Burke knew the arrest record to be false and therefore did not rely on it in refusing to hire Batiste, but advanced it only as an ostensible justification. If we believed Batiste did wish to suggest this,

we would be at a loss to understand the theory underlying his claim. Surely, Batiste would not be heard to argue that all possible grounds that Burke might truly have relied upon were invalid.

Barring this, we are left with the allegation that Burke had reason to know that the record was false. However, we have found no precedent clearly establishing that an employer must *reasonably* rely on an applicant's arrest record in refusing him employment. Indeed, the absence of such a clear standard follows, *a fortiori,* from our discussion in the text in which we assumed merely that the employer *actually* relied on the record. In accord with these observations is the language from *Bishop v. Wood,* quoted, supra, at footnote 4, to the effect that "ill-advised personnel decisions" are not invalidated by the due process clause.

7. The other cases discussed by Burke hardly bear on the issue presented. *See,* e.g., *Gregory v. Litton Systems, Inc.,* 472 F.2d 631 (9th Cir. 1973) (use of arrest record in private employment decision violates Title VII when such use disproportionately discriminates against black applicants and is not related to a "reasonable business purpose"); and *Utz v. Cullinane,* 520 F.2d 467 (D.C.Cir.1975) (District of Columbia ordinance prohibited routine dissemination of arrest identification data by the D.C. Metropolitan Police Department to the Federal Bureau of Investigation).

as contemplated by our constitutional structure and 'firm application of the Federal Rules of Civil Procedure' is fully warranted in such cases." *Harlow,* 457 U.S. at 819 n. 35, 102 S.Ct. at 2739 n. 35, *citing Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). We can envision few cases more appropriately subject to *Harlow's* counsel than the present one. We, therefore, affirm the trial court's order granting summary judgment.

AFFIRMED.