Elizabeth Hall THURSTON, Appellant,

v.

UNITED STATES of America, Appellee.

Elizabeth H. THURSTON, Appellant,

v.

UNITED STATES POSTAL
SERVICE, Appellee,

and

William Bolger, Postmaster of the United States; J.P. Saunders; C.L. Fallis; Paul N. Carlin, Defendants.

Nos. 85–2066(L), 85–2067.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1986.

Decided Feb. 2, 1987.

Rehearing Denied March 30, 1987.

Janet H. Thurston (Cohen & Thurston; Charles R. Allen, Jr., on brief), for appellant.

R. Andrew German, Law Dept., U.S. Postal Service (Charles D. Hawley, Asst.

Gen. Counsel; Michael T. Tidwell, on brief), for appellee.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.

McMILLAN, District Judge:

Appellant, Elizabeth Hall Thurston, applied for and was denied a job as part time postmaster in Oriskany, Virginia. Thurston filed a privacy act petition pursuant to 5 U.S.C. § 552a(g)(1) seeking access to the records the Postal Service made concerning her application for the job. She later filed a "constitutional tort" action against individual Postal Service officials alleging that they denied her the job in violation of her First Amendment rights.

The cases were consolidated for trial. Immediately before trial, the trial court dismissed the individual defendants in the employment case and substituted the Postal Service as defendant. In the privacy act case, the trial court dismissed the case as moot and ruled that Thurston was entitled to $200.00 in attorneys' fees. Thurston appealed the trial judge's decisions in both cases; they were consolidated for appeal.

## FACTS

On April 6, 1981, plaintiff-appellant Thurston filed a privacy act case in the United States District Court for the Western District of Virginia, against the United States. In this suit, Thurston alleged that she went to the Postal Service offices in Roanoke, Virginia on January 9, 1981 and on January 13, 1981 and requested access to any records the Postal Service had concerning her. Thurston alleged that after she was denied access to the records, her attorney wrote two letters to John Mount, Executive Secretary, Postal Service Selection Board, requesting access to the information, but that she did not receive any response from the Postal Service. J.App. 2.

On March 19, 1982, Thurston filed a complaint in the United States District Court

for the Western District of Virginia, against William Bolger, Postmaster of the United States, in his individual and official capacity. J.App. 13. On May 20, 1982, defendant Bolger filed an answer and on June 1, 1982, Thurston requested a jury trial. J.App. 18, 21.

Thurston filed an amended complaint on December 9, 1982. Thurston named as defendants William Bolger, Postmaster of the United States, J.P. Saunders, Section Center Manager and Postmaster, C.L. Fallis, Manager, Virginia District, and Paul N. Carlin, Regional Postmaster General. These four defendants comprise the Regional Management Selection Board of the United States Postal Service. Thurston sued each defendant both in his individual capacity and in his official capacity. J.App. 47.

Thurston alleged in the amended complaint that she applied for a position as postmaster of Oriskany, Virginia, that she was qualified for the position, and that she was denied the job by the Regional Management Selection Board because of her exercise of her First Amendment rights. She alleged in paragraph 14 of the amended complaint that the actions of the defendants "were done maliciously and in bad faith with the intent to wrongfully deny the plaintiff her statutory and constitutionally protected rights." J.App. at 51.

Among the items of relief Thurston requested were: 1) that the court issue an injunction requiring the Postal Service to place her in a job comparable to the one she was denied; 2) that she be awarded back pay and future pay at a rate to which she would have been entitled if she had been given the job; and 3) that the defendants jointly and severally pay her $25,000.00 in compensatory damages and $25,000.00 in punitive damages.

The defendants filed a joint answer denying that Thurston was denied the job because of her exercise of First Amendment rights. The defendants did not plead qualified immunity as an affirmative defense, but did deny paragraph 14 of Thurston's complaint.

On August 8, 1985, the parties arrived at the court prepared for trial. Immediately before trial, Thurston conceded her claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fourteenth Amendment. J.App. at 68. The trial court also dismissed Thurston's claim that she was denied the job because she did not belong to a local church, because Thurston did not exhaust the applicable administrative procedures of Title VII, 42 U.S.C. § 2000e et seq. J.App. 68. Thurston did not object and does not appeal this decision.

After her concessions and the trial court's ruling, Thurston's employment case involved only her First Amendment rights concerning political activity. The defendants then moved to dismiss the named individual defendants, arguing that the individual defendants had either an official immunity or a qualified immunity. The defendants argued that under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), government officials performing discretionary functions are shielded from liability unless their conduct violates a clearly established constitutional right. J.App. 71.

Thurston argued that the extent of immunity was a matter to be determined by the evidence and that there was no evidence before the court at the time. J.App. 74. Thurston did not offer to produce any evidence to show that the individuals would not be immune (for instance, evidence supporting her allegation that the individuals acted maliciously and in bad faith with an intent to deprive her of her First Amendment rights).

The trial court ruled that case against the individual defendants should be dismissed, but that the case would proceed against the Postal Service. The court stated:

Well, I'm going to simplify and sanitize the case by taking out the individual complaint. I'm going to let the case proceed the plaintiff against the Postal Service. I can't envision any circumstances

in which, I mean, if it's determined that she's entitled to recover that she couldn't recover from the Postal Service. So I don't think it affects her claim in any way. All right. So the case will proceed to trial as Elizabeth Thurston against the United States Postal Service and we have the question of whether or not that it was because of her exercise of her First Amendment right that she was not offered employment. In other words, but for this, would she have been the most qualified person and the person who would have been hired. So it's a rather simple matter, a rather simple case.

J.App. at 74–75. Thurston did not object to this ruling.

The case proceeded to trial. There was no jury. Neither party objected. Thurston did not remind the court that she had requested a jury trial.

At trial Mrs. Thurston testified that she had lived in Oriskany, Virginia for 17 years. She is a Republican and has been involved in campaigning in local elections. J.App. 79. She also has been involved in community affairs such as speaking before local public bodies. Thurston said that she has BA and LLB degrees from the University of Tulsa, in Tulsa, Oklahoma. J.App. 80–81.

Thurston stated that after she applied for the Postmaster job, Mr. Cain, a Postal Service employee who was not named as a defendant, came to Oriskany and interviewed the four job applicants. Mr. Cain asked her a number of questions, including whether she was politically active. J.App. 90.

Thurston later received a letter from J.P. Saunders which said that she had not been selected for the position. The letter stated that the "final determination was based on a collective judgment as to the best qualified individual among those who applied." J.App. 227.

Thurston testified that after she received the letter from Saunders, she went to the Roanoke Post Office on two separate occasions and requested access to her employment application file. She did not get to see her file on either occasion. J.App. 98–102. Thurston's attorney then wrote a letter dated February 12, 1981 to John Mount requesting access to the files. J.App. 228. After receiving no response, Thurston's attorney wrote another letter.

John Mount replied on April 2, 1981. His letter contained some information, but did not contain an investigative memorandum written by Leman Doyle Cain. J.App. 108. Contemporaneously with receipt of this letter, Thurston filed the privacy act suit. Around September 29, 1981, Thurston received everything contained in her application file, including the investigative memorandum. J.App. 230.

Mrs. Vivian King Lemon, the former postmaster of Oriskany, testified that in her opinion, Thurston was the best qualified applicant. J.App. 133–134. Mrs. Lemon, however, was not involved in the selection process. J.App. 137.

Harold Preston Driscol, Jr., a letter carrier in Oriskany, testified that Mr. Cain, the investigator for the Postal Service, told him that Mrs. Thurston was the best qualified person. J.App. 141.

Leman Doyle Cain testified that he conducted an investigation on all four applicants for the Oriskany Postmaster position. J.App. 146. Cain followed the criteria listed in a Postal Service confidential field manual when he conducted his investigation. The field manual states that the investigator should:

Determine whether the candidate is known to have publicly endorsed any issue of a controversial nature which might impair the candidate's effectiveness. Report whether the candidate occupies any political position or has been involved in possible improper political activity.

Cain wrote an investigative memorandum, dated November 10, 1980, which, in pertinent part reads:

3. Ten persons were interviewed concerning the applicants ... Six of the persons interviewed live in the community of Oriskany. All the persons inter-

viewed in the community advised that all four candidates were persons of good moral character and were good citizens. However, five of the six local residents indicated that they did not prefer Mrs. Elizabeth Thurston as their next postmaster.

4. ... Mr. William P. Lemon, Officer-in-Charge at the Oriskany Post Office, stated that his first choice for the next postmaster would be Bonnie Warf ... He knew nothing unfavorable concerning Mrs. Drummond, but stated that her husband is a self-employed carpenter who does odd jobs for a living and might not be totally acceptable by the community. He felt that Mrs. Thurston would be totally unaccepted by the community. He stated she was involved in local politics and was very active in causes which did cause some controversy in the area. Mrs. Thurston was also described as an outsider, who did not belong to the local church and did not really have a good acquaintance with local community members. None of the other persons interviewed seemed to show any concern for the employment status of Mrs. Drummond's spouse. One person interviewed did feel that Mrs. Drummond was too talkative; however, this was not reflected in any of the other interviews.

5. The only candidate having a recent employment record is Mrs. Jeanie Drummond. She is presently employed by New Castle High School, New Castle, VA, in a SETA position which terminates in December 1980 ... Mr. Bill Edwards, principal of the high school, advised that she was an outstanding employee: she was well liked by those who supervised her and worked with her. He stated she was dependable, honest, and trustworthy. She has a good professional attitude and is discreet and conscientious in her work. He rated her as an outstanding employee. Mrs. Drummond has also been employed as an Assistant Manager at a dime store in New Castle, VA. This business is no longer in operation.

6. Mrs. Elizabeth Thurston is, by far, the most educated of the four applicants.

She holds a law degree from the University of Tulsa, Tulsa, OK. She has, however, had no work experience since 1945 ...

8. Considering work experience and personal preference by those in the community, a list of eligibles in order of preference is as follows:

Jeanie C. Drummond

Bonnie L. Warf

Rebecca J. Lane

Elizabeth H. Thurston ...

10. Mrs Thurston appears to be controversial within the community. Sheriff Norman Sprinkle, Botetourt County, Fincastle, VA, advised that Mrs. Thurston is not a long-time resident of the county or Oriskany. He stated she has been an outsider, who has not blended into the community. She is better educated than most of the members of the community and appears to be somewhat distant from local customs and activities. Reactions from the persons interview (sic) who reside in Oriskany indicate that the town is a very close knit group of people who work well together. Most of them belong to a local church and take an active part in it. Mrs Thurston, by not being a member of the church, seems to be considered as a person who has little interest in community.

J.App. 239–240.

Cain testified at trial that he rated Mrs. Drummond first because of her work experience and the good recommendation from her employer. J.App. 169. He said that work experience prevented Mrs. Thurston from being ranked number one, not the fact that she was controversial. J.App. 160. Cain did not recall telling Mr. Driscol that Mrs. Thurston was the *most* qualified. He said he may, however, have told Driscol that she was qualified. J.App. 163.

James P. Saunders, the manager of the Management Selection Committee for the Roanoke area, testified that he adopted the recommendation of Mr. Cain after reviewing the complete file. J.App. 185. Saunders recommended to Charles L. Fallis that

Mrs. Drummond be given the position. J.App. 254. This recommendation was tantamount to a final decision. J.App. 187. Fallis concurred in the recommendation in a letter to John Mount. J.App. 247. William Bolger, Postmaster General, approved the selection of Mrs. Drummond. J.App. 31.

During the decision making process, Saunders, as required by Postal Service regulations, prepared a qualification report on Thurston. This qualification report summarized the report made by Cain. J.App. 251. At trial Saunders testified that even if Mrs. Thurston had gone to the local church and was not politically active or controversial, she would not have been the first choice. Saunders stated:

> She would still not have been the first choice. That had no bearing. I didn't have to go to that at all. The fact is that the candidate that was number one on the Investigative Memorandum, I verified through the application that she had the most recent experience in the private sector. In fact she had been an assistant manager of a five and ten cent store and she had good ratings from both immediate places of business. Now, the other candidates did not have immediate prior work experience.

J.App. 188. Saunders concluded that Thurston's church and political affiliations played no part in his decision. J.App. 188.

After hearing all the evidence, the trial judge ruled for the Postal Service in the First Amendment employment case. The court found that Thurston was not denied the position of postmaster because of her political activity or her church affiliation. The court found that Saunders recommended Mrs. Drummond for the position because Mrs. Drummond had a good recent work record and was the most qualified applicant. J.App. 212.

In the privacy act case, the trial court dismissed the case as moot, because, prior to trial, Thurston received all the information she had requested. However, the court taxed costs against the Postal Service, and directed the clerk to tax as costs

two hundred dollars attorneys' fees. The court held that $200.00 was a reasonable fee for the services Thurston's attorney provided in the privacy act case. J.App. 213.

The trial court stated that he felt that Thurston probably should be awarded more as attorneys' fees, but that $200.00 was reasonable given that the case was not complicated. J.App. 216. Thurston did not object to the trial court's ruling or request an opportunity to submit a fee petition.

The trial court did not mention statutory damages when it ruled on the privacy act case. Thurston, however, remained silent and did not inform the court that she was seeking damages in her privacy act claim.

## THE FIRST AMENDMENT–EMPLOYMENT CASE

Appellant Thurston challenges the trial court's decision dismissing her First Amendment *Bivens* claim against individual defendants Bolger, Saunders, Fallis, and Carlin. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Thurston does not challenge the sufficiency of evidence supporting the trial court's ruling that the Postal Service did not act unconstitutionally when it denied her the Oriskany postmaster position.

## THURSTON HAS WAIVED HER ARGUMENT THAT THE TRIAL JUDGE IMPROPERLY DISMISSED THE INDIVIDUAL DEFENDANTS

■ Thurston suggests that the individual defendants waived their qualified immunity defense by failing to plead it as an affirmative defense. Qualified immunity is an affirmative defense that must be pleaded by the defendant. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Although *Gomez* involved a state official's immunity in an action under 42 U.S.C. § 1983, the same rule should apply in Thurston's *Bivens* action against federal officials. *See Harlow v. Fitzgerald,* 457

U.S. 800, at 809 and 815, 102 S.Ct. 2727, at 2733 and 2736, 73 L.Ed.2d 396 (1982).

However, Thurston has waived this objection by failing to object to the procedural irregularity at trial. In *Batiste v. Burke*, 746 F.2d 257 (5th Cir.1984), an applicant for a postal service position brought suit against the local postmaster, alleging that the postmaster's decision not to hire him violated due process. Before answering the defendant filed a motion to dismiss on qualified official immunity grounds. The Fifth Circuit noted that although the propriety of raising affirmative defenses by motion is questionable, there is ample authority for raising the affirmative defense of qualified immunity by motion for summary judgment. In addition, the court stated that the applicant had waived any possible objection by not raising the issue below and by responding to the merits of the defendant's motion. 746 F.2d at 259.

This court agrees with the Fifth Circuit's decision in *Batiste;* Thurston has waived her objection to the defendants' failure to raise qualified immunity as an affirmative defense. In absence of exceptional circumstances, questions not raised and properly preserved at trial will not be noticed on appeal. *Skippy, Inc. v. CPC International, Inc.,* 674 F.2d 209, 215 (4th Cir.1982); *Malbon v. Pennsylvania Millers Mutual Insurance Co.,* 636 F.2d 936, 941 (4th Cir. 1980).

Thurston argues that the trial judge should not have dismissed the individual defendants immediately before trial without hearing evidence on the qualified immunity question.

The Supreme Court in *Harlow v. Fitzgerald, supra,* held that government officials performing discretionary functions will generally be shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. The court noted that this "objective reasonableness" test permits the resolution of insubstantial claims on summary judgment and that on summary judg-

ment, a judge should determine the current applicable law, and whether that law was clearly established at the time the action occurred. 457 U.S. at 818, 102 S.Ct. at 2738.

When it dismissed the case against the individual defendants, the trial court did not determine, on the record, whether the conduct of the individual defendants violated a "clearly established constitutional right of which a reasonable person would have known." The manner in which the trial court dismissed the individually named defendants was error.

Thurston, however, has waived any objection by failing to raise the issue below. Although Thurston did point out to the trial judge that there was no evidence before the court on the question of qualified immunity, Thurston did not object at trial to the manner in which the trial court ruled or to the case proceeding to trial against the Postal Service. Thurston had a duty to make it clear to the trial court what her position was after the trial court's ruling. Otherwise, the trial court is deprived of the opportunity to remedy its error, if one exists. *Malbon v. Pennsylvania Millers Mutual Insurance Co.,* 636 F.2d at 941.

## RES JUDICATA AND COLLATERAL ESTOPPEL BAR THURSTON'S SUIT AGAINST THE INDIVIDUAL DEFENDANTS

■ Thurston's suit against Postmaster General Bolger, Regional Postmaster General Carlin, District Manager Fallis, and Postmaster Saunders names them in both their official capacities and their individual capacities. A suit against a federal official for acts performed within his official capacity amounts to an action against the sovereign. *Portsmouth Redevelopment & Housing Authority v. Pierce,* 706 F.2d 471 (4th Cir.1983). *Res judicata* bars subsequent litigation against federal officials sued in their official capacity when the United States has won on the same issue in a previous suit. *Mathis v. Laird,* 457 F.2d 926 (5th Cir.), *cert denied,* 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). The trial

court found that the United States Postal Service did not unconstitutionally deny Thurston the position of postmaster. This finding bars any action against the individuals in their *official* capacity.

■ Thurston is collaterally estopped from suing defendants Bolger, Carlin, Fallis, and Saunders in their *individual* capacities. Collateral estoppel bars relitigation in a suit on a different cause of action of issues necessarily determined in a previous suit if the judgment in the first suit is not appealed and remains unmodified. *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Mutuality of parties is not required to apply the doctrine of collateral estoppel. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Defensive collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979). Collateral estoppel may be used defensively if the plaintiff had a full and fair opportunity to litigate the issue in the previous suit. *Blonder-Tongue*, 402 U.S. at 329, 91 S.Ct. at 1443.

The trial judge, in ruling for the Postal Service, found that Thurston's political and church activities did not have anything to do with the decision of the Postal Service officials not to hire her. Thurston does not challenge the finding of the trial court, nor does she contend that she did not have a full and fair opportunity to litigate her claim against the Postal Service. Thurston wants a second trial to determine whether the individual defendants improperly denied her the postmaster position. Since the trial court already necessarily found that the individually named defendant employees did not improperly deny Thurston the position, she is collaterally estopped from a second trial against the individually named defendants.

## THURSTON WAIVED HER RIGHT TO A JURY TRIAL

■ In her brief, Thurston challenges the right of the trial judge to make the factual determination that the Postal Service did not unlawfully deny her the postmaster job. Thurston's position in her brief is that the trial court's ruling that the claims against the individual defendants would be dismissed and that the case would proceed against the Postal Service deprived her of her right to a jury trial. She also argues in her brief that collateral estoppel should not apply because she was denied the right to a jury trial.

The decisions of this circuit in *Malbon v. Pennsylvania Millers Mutual Insurance Co.*, 636 F.2d 936 (4th Cir.1980) and *Skippy, Inc. v. CPC Intern, Inc.*, 674 F.2d 209 (4th Cir.1982) are especially applicable to Thurston's jury trial argument. In *Malbon*, the plaintiff-appellants argued that the case, which had already been tried by a judge, should be remanded because the trial court failed to exercise its discretion and grant a jury trial pursuant to Rule 39(b). The Fourth Circuit ruled that the plaintiffs could not ask at such a late date for the case to be remanded because the issue was not raised below and because the plaintiffs did not suggest that the trial judge committed any error during the bench trial proceedings. 636 F.2d at 941. The court emphasized that a remand was inappropriate where "the only claim is that, although the judge was free from any error in his conduct of the trial, the plaintiffs nevertheless wish to insist on trial by jury." 636 F.2d at 941.

In *Skippy*, the plaintiff failed, until after a bench trial, to pursue a claim in its complaint for damages for fraudulent inducement, a claim which would have afforded the plaintiff a right to a jury trial. The court held that the plaintiff's argument that it was denied a right to a jury trial would not be noticed on appeal because the plaintiff had not informed the court that it sought damages for fraudulent inducement. The court noted that the plaintiff's

failure to inform the court of its claim "convinces us that such damages were not contemplated until after trial and that Skippy, Inc. raises the cause of action now merely to get a new trial on other claims actively pursued below." 674 F.2d at 212.

Thurston's position on appeal is similar to the positions of the plaintiffs in *Malbon* and *Skippy*. Thurston does not challenge the correctness of the trial court's ruling that she was not denied the postmaster job in violation of her constitutional rights. She did not object to the trial court's ruling that the individual defendants would be dismissed and did not mention to the trial judge that she had requested a jury trial. Regardless of any potential merit in Thurston's arguments, the issues will not be considered on appeal since Thurston did not raise them below.

In addition, Thurston has abandoned her claim of right to jury trial. In oral argument before this court, counsel for Thurston repeatedly stated that she was not complaining about the lack of a jury trial, but instead was arguing that the procedural defects below prevent application of the doctrine of collateral estoppel.

Thurston cites no authority for her contention that even if the substantive result of a trial is not challenged, procedural mistakes require that the doctrine of collateral estoppel not apply. Certain procedural errors may have been made by the trial judge in this case. However, Thurston did not object below, even though she had a duty to make her position clear to the trial judge so that he could correct any potential procedural errors. *Malbon v. Pennsylvania Millers Mutual Insurance Co.*, 636 F.2d at 941. No extraordinary circumstances exist that would make consideration of issues not raised below appropriate.

The decision of the trial judge in the employment case is AFFIRMED.

## THE PRIVACY ACT CASE

■ Thurston appeals the trial court's ruling in the privacy act case on two grounds. First, Thurston argues that the trial court erroneously failed to consider and decide the issue of her right to statutory damages pursuant to 5 U.S.C. § 552a(g)(4). Second, Thurston contends that the trial judge abused his discretion when he awarded her $200.00 in attorney's fees without allowing her to present a fee petition.

The privacy act, 5 U.S.C. § 552a, provides for four types of civil suits. Section 552a(g)(1) states:

(g)(1) Civil remedies.—Whenever any agency

(A) makes a determination under (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district court of the United States shall have jurisdiction in the matters under the provision of this subsection.

Subsection (d)(1), the subsection referred to in § 552a(g)(1)(B), in pertinent part, states that federal agencies shall:

(1) upon request by any individual to gain access to his record or to any information pertaining to him which is con-

tained in the system, permit him ... to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ...

Although Thurston never specified under what subsection she was bringing her privacy act suit, her suit was brought under § 552a(g)(1)(B). Thurston brought the suit alleging that the Postal Service failed to honor her request to see her records.

The privacy act allows for actual damages or minimum statutory damages of $1000.00 in suits brought under subsection (g)(1)(C) or (D) if the court determines that the agency acted intentionally or willfully. 5 U.S.C. § 552a(g)(4). The privacy act does not provide for statutory damages in the type of suit Thurston brought, a suit under subsection (g)(1)(B).

■ Thurston contends that the trial judge abused his discretion when he granted her $200.00 attorney's fees, but did not allow her the opportunity to file a fee petition. Thurston states that the trial judge could not determine what a "reasonable" fee was without a petition detailing the number of hours her attorney spent on the case, and a reasonable hourly fee..

Thurston cites no authority for her proposition that the trial judge is *required* to allow the party to submit a fee petition before the court rules on the reasonableness of attorney's fees. However, regardless of any potential merit of the proposition, Thurston once again did not object at trial to the manner in which the trial judge ruled. Nor did Thurston request at the trial that she be allowed to submit a fee petition. Under *Malbon, supra,* Thurston had a duty to state her position so that the court could remedy any omission, if one in fact existed. 636 F.2d at 941.

Thurston had the opportunity to raise the issue; after announcing his ruling, the trial judge asked the parties if there were any additional findings of fact or conclusion of law that they would like for him to make. J.App. at 214. This provided Thurston the opportunity to inform the judge of her belief that she should be allowed to submit a fee petition. It is too late now for Thurston to argue that the case be remanded to allow her to submit a fee petition.

■ The Postal Service, in its brief, argues that the trial court's ruling that Thurston was entitled to any attorney's fees under 5 U.S.C. § 552a(g)(3)(B) was erroneous because Thurston did not substantially prevail and because Thurston did not exhaust her administrative remedies. The Postal Service, however, did not file notice of a cross-appeal as required by Federal Rule of Appellate Procedure 4(a)(3). The well established rule is that without filing a cross-appeal, an appellee "may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, where what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924). *See also, Morley Construction Co. v. Maryland Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 327, 81 L.Ed. 593 (1937); *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 668 (5th Cir.1983). The $200.00 attorney's fees award in this case does not present any exceptional circumstances that would require suspending the requirement for a timely cross-appeal.

The decision of the trial judge, as to statutory damages and attorney's fees, is AFFIRMED.