19 F.3d 1430
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerry St. JARRE, Plaintiff-Appellant,
v.
Heidelberger DRUCKMASCHINEN, A.G., Defendant-Appellee.
 No. 93-1848.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1994.
Decided March 25, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia at Norfolk. Tommy E. Miller, Magistrate Judge. (CA-93-59-N)
 Robert L. Mills, Rutter & Montagna, Norfolk, VA, for appellant.
 Timothy Meade Richardson, Huff, Poole & Mohoney, P.C., Virginia Beach, VA, for appellee.
 David N. Ventker, Huff, Poole & Mohoney, P.C., Virginia Beach, VA, for appellee.
 E.D.V.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 I.
 
 1
 Plaintiff, Jerry St. Jarre, allegedly injured in the operation of a printing press manufactured by defendant, Heidelberger Druckmaschinen ("HDAG"), appeals the district court's ruling that it lacked in personam jurisdiction over HDAG. We affirm.
 
 II.
 
 2
 St. Jarre alleged that on February 16, 1990 he suffered serious injuries to his right hand and upper right arm while operating an offset printing press manufactured by HDAG. St. Jarre is a citizen of the Commonwealth of Virginia, HDAG is a German corporation and the accident occurred in Norfolk, Virginia.
 
 
 3
 St. Jarre alleged that HDAG had a substantial business connection with Heidelberg Eastern, Inc., a Delaware corporation which distributes products manufactured by HDAG as well as by other manufacturers. To show that HDAG participated actively through Heidelberg Eastern in the United States Market, St. Jarre introduced a HDAG brochure published in English and three Heidelberg Eastern invoices bearing HDAG's logo. The brochure states that HDAG is the "world's leading manufacturer of printing presses" and also bears the logos of two other manufacturers whose products are distributed by Heidelberg Eastern.
 
 
 4
 The printing press that allegedly caused the accident was sold by HDAG to Heidelberg Eastern fifteen years before the accident. Heidelberg Eastern sold the press to a company in Michigan and it was later sold to a company in New Mexico. The company in New Mexico then sold the press to St. Jarre's employer in Norfolk, Virginia.
 
 
 5
 The Heidelberg Eastern invoices showed that it purchased parts from HDAG which were subsequently sold to St. Jarre's employer.
 
 
 6
 HDAG submitted affidavits, uncontradicted by evidence submitted by St. Jarre, showing that Heidelberg Eastern was a Delaware Corporation wholly owned by the East Asiatic Company, a Danish corporation. HDAG and Heidelberg Eastern share no corporate officers or directors.
 
 
 7
 St. Jarre filed the suit in the Circuit Court for the City of Norfolk on February 14, 1992 and it was removed to federal court on diversity grounds on January 26, 1993. The next day, HDAG moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal and subject matter jurisdiction. On April 1, 1993, the district court found there was subject-matter jurisdiction based on diversity of citizenship and granted St. Jarre permission to file an amended complaint stating with particularity the basis for personal jurisdiction. St. Jarre filed an Amended Complaint on April 9, 1993 and on April 23, 1993 HDAG filed its second motion to dismiss for lack of personal jurisdiction.
 
 
 8
 At the pretrial conference, the district court ordered that discovery commence and required St. Jarre to respond to HDAG's Motion to Dismiss on or before May 17, 1993. No discovery requests were issued by St. Jarre until the day before the scheduled hearing on the motion. At the hearing on June 10, 1993, the district court determined that it could not exercise personal jurisdiction over HDAG and denied St. Jarre's request for additional discovery.
 
 III.
 
 9
 This Court reviews de novo the district court's legal conclusions concerning personal jurisdiction. However, to the extent that the district court's conclusions are based on findings of fact, such findings should not be disturbed unless clearly erroneous. Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993).
 
 
 10
 When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must show by a preponderance of the evidence that jurisdiction may properly be exercised. Id. at 59-60. Courts have drawn a distinction between specific jurisdiction and general jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). When the cause of action arises out of defendant's minimum contacts to the forum specific jurisdiction is appropriate. Id. General jurisdiction is proper when the cause of action is unrelated to defendant's contacts and defendant has engaged in continuous, systematic and fairly extensive business activities within the forum. Id. at 414-416. The plaintiff seeks to base jurisdiction on defendant's specific contacts.
 
 
 11
 Plaintiff must demonstrate that the forum's long-arm statute authorizes service of process on the defendant. See Omni Capital Int'l Ltd. V. Rudolf Wolff & Co., 484 U.S. 97, 102-03 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). St. Jarre claims that personal jurisdiction could be exercised under Sec. 8.01-328.1(A)(1)* which provides that "[a] court may exercise jurisdiction over a person, who acts directly by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." Va.Code Ann. Sec. 8.01-328.1(A)(1). Although only a single transaction is necessary to confer jurisdiction under the statute, under Virginia law, the plaintiff's cause of action must arise from that transaction. Peanut Corp. of America v. Hollywood Brands, Inc., 696 F.2d 311, 313-14 (4th Cir.1982).
 
 
 12
 St. Jarre argues that because the machine that allegedly caused the injury was manufactured by HDAG and later sold by Heidelberg Eastern, the same transaction test of the Virginia long-arm statute is met. There is no evidence in the record of any transaction conducted by HDAG in Virginia, much less a transaction associated with the cause of action. The printing press came to Virginia, only after having been purchased from a company in New Mexico, which in turn had received the press from a company in Michigan. That company purchased the press from Heidelberg Eastern which had purchased the press from HDAG in Germany.
 
 
 13
 St. Jarre also argues that the Virginia long-arm statute is applicable because Heidelberg Eastern, acting as HDAG's alleged alter ego, sold St. Jarre's employer a repair part for the printing press. HDAG sold the repair part to Heidelberg Eastern in Germany who subsequently sold the part to St. Jarre's employer in Virginia. This repair part was not involved in the alleged injury to St. Jarre. Further, the only evidence demonstrating an "alter ego" relationship between HDAG and Heidelberg Eastern are invoices from Heidelberg Eastern that bear the same logo that appear on the printing press manufactured by HDAG. The invoices also bear the logos of two other manufacturers and are insufficient to support St. Jarre's argument.
 
 
 14
 Moreover, Heidelberg Eastern is not technically or legally owned, operated or controlled by HDAG. They share no corporate officers or directors and HDAG does not employ Heidelberg Eastern as its agent, employee, or representative. There is no evidence linking the companies in such a way as to pierce the corporate veil. See Mylan, 2 F.3d at 62-63. The Virginia long-arm statute cannot confer jurisdiction over HDAG.
 
 
 15
 Even if personal jurisdiction is authorized under the Virginia longarm statute, plaintiff must also prove that the exercise of jurisdiction on the defendant would not violate the Due Process Clause of the Fourteenth Amendment. See Omni, 484 U.S. at 102-03; World-Wide Volkswagen, 444 U.S. at 291. A manufacturer that places a defective product in the stream of commerce through a chain of distributors may be accountable in a forum where its product causes injury to the ultimate consumer when the manufacturer has "purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).
 
 
 16
 St. Jarre claims that HDAG purposefully availed itself of Virginia law by being a world-marketer of presses. However, the mere placement of products into the stream of commerce by a nonresident defendant is not an act purposefully directed at the forum state. Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.); see Worldwide Volkswagen Corp., 444 U.S. at 297 ("[T]he mere likelihood that a product will find its way into the forum State" will not create personal jurisdiction.); Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 658 (4th Cir.1989) ("A 'stream of commerce' theory of personal jurisdiction ... cannot supplant the requirement that a defendant in some way purposefully avails itself of forum law.").
 
 
 17
 Neither HDAG nor Heidelberg Eastern sold the machine to St. Jarre's employer in Virginia. See De James v. Magnificence Carriers, Inc., 654 F.2d 280, 285-86 (3d Cir.) (no stream of commerce jurisdiction where defendant's product not sold in forum), cert. denied, 454 U.S. 1085 (1981); Bean Dredging Corp. v. Dredge Technology Corp, 744 F.2d 1081, 1082-85 (5th Cir.1984). After at least two other sales over the course of fifteen years the printing press arrived in Virginia. There is no evidence that HDAG designed the products for the market in Virginia, advertised in Virginia, established channels for providing regular advice to customers in Virginia, or marketed the product through a distributor who agreed to serve as the sales agent in Virginia. See Asahi, 480 U.S. at 112. (opinion of O'Connor, J.). The exercise of personal jurisdiction over a foreign manufacturer, whose product reached the forum state because of intervening sales by third parties, would be unfair and unreasonable. See id. at 114-18.
 
 IV.
 
 18
 St. Jarre also argues that if the district court had allowed more time for discovery, he would have shown that HDAG and Heidelberg Eastern were sufficiently intertwined and had sufficient contact to Virginia to support a finding of personal jurisdiction. District courts have broad discretion in resolving discovery problems that arise in pending cases. Mylan, 2 F.3d at 64.
 
 
 19
 HDAG first raised personal jurisdiction as an issue on January 27, 1993 in its first motion to dismiss. St. Jarre responded by representing to the court that he would conduct a "reasonable investigation" devoted to the question. The district court reserved ruling on personal jurisdiction until St. Jarre filed an Amended Complaint and ordered HDAG to raise the question of personal jurisdiction within fifteen days of service of the Amended Complaint by filing a motion to dismiss. HDAG complied with the court's order. St. Jarre did not file any discovery requests until sixteen months after he filed suit, more than four months after HDAG raised the personal jurisdiction issue and six weeks after he received HDAG's affidavits. The plaintiff had ample opportunity to take discovery and the pleading contained no specific facts that could establish the requisite contacts with the state. The district court did not abuse its discretion.
 
 
 20
 AFFIRMED.
 
 
 
 *
 On appeal, St. Jarre also relies on Va.Code Ann.Secs. 9.01-328.1(A)(2) and (A)(3) for purposes of personal jurisdiction. However, it is the practice of this Court not to consider arguments not raised below, absent exceptional circumstances. See, e.g., In re Johnson, 960 F.2d 396, 404 (4th Cir.1992); Sierra Club v. Larson, 882 F.2d 128, 133-34 (4th Cir.1989); Thurston v. United States, 810 F.2d 438, 446 (4th Cir.1987). Here, there are no such circumstances