**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ZACHAIR, LIMITED,
Plaintiff-Appellant,

v.

JOHN A. DRIGGS; THE DRIGGS
CORPORATION; SOUTHERN MARYLAND
SAND AND GRAVEL CORPORATION;
WASHINGTON EXECUTIVE AIRPARK
LIMITED PARTNERSHIP; WASHINGTON

No. 97-1811

EXECUTIVE AIRPARK, INCORPORATED;
CECIL SAND AND GRAVEL,
INCORPORATED; CHARLES SHAPIRO;
BRUCE JAFFE,
Defendants-Appellees,

and

JEFFREY M. FROST,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Andre M. Davis, District Judge.
(CA-96-2364-AMD)

Submitted: February 24, 1998

Decided: April 30, 1998

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mark C. Hansen, Neil M. Gorsuch, KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C., Washington, D.C., for Appellant. Lee H. Simowitz, Leonard C. Greenebaum, Shelby F. Mitchell, Jenifer M. Brown, Wendy I. Norris, BAKER & HOSTETLER, L.L.P., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Zachair, Ltd. appeals the district court order dismissing its claim that Defendants conspired to unreasonably restrain trade and commerce in violation of the Sherman Act, 15 U.S.C.§ 1 (1994). We previously granted Appellees' motion to submit the case on the briefs and for the reasons set forth below, we affirm.

This case arises from a dispute over a parcel of land in Maryland used as a commercial aviation airport and a sand and gravel mine.[1] In 1988 Defendant Washington Executive Airpark Limited Partnership ("WEALP") purchased the land and began to operate a sand and gravel mining facility. Washington Executive Airpark, Inc. ("Airpark"), WEALP's general partner, simultaneously ran an airport on the property. Defendant John Driggs controlled the business affairs of Airpark. WEALP eventually defaulted on its real estate and tax loans and filed for bankruptcy.

In November 1994 the property was auctioned at a foreclosure sale.

_____

[1] On appeal from an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we accept as true the facts alleged in the complaint. McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996).

2

At Driggs' request, Jeffery M. Frost, Bruce Jaffe, and Charles Shapiro attended the foreclosure sale as qualified bidders. Frost was vice president and general counsel to the Defendant Driggs Corporation. Zachair alleges that Jaffe, Shapiro, and Frost had no intention to bid on the property, but merely attended the auction for the purpose of providing Driggs with an excuse to challenge the foreclosure sale. Despite this scheme, Zachair obtained the property at the foreclosure sale.

Following the foreclosure sale Zachair alleges that the corporate Defendants conspired to increase Zachair's costs in an attempt to prevent Zachair from operating a sand and gravel mining operation on the property. Specifically, Zachair claims that Defendants:
(1) continuously attempted to challenge the foreclosure sale;
(2) refused to honor their obligation to remit all Airpark rental payments and mining royalties to the Substituted Trustees; (3) refused to vacate the property and continued to maximize the depletion of mineral resources from the property following the foreclosure; and
(4) attempted to prevent Zachair from obtaining a mining permit.

This Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) de novo. Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217 (4th Cir. 1994). Section one of the Sherman Antitrust Act prohibits combinations or contracts in restraint of trade. In order to survive the Defendants' Rule 12(b)(6) motion, Zachair must allege facts which, if proven true, would establish the necessary elements of a § 1 violation: (1) an agreement between at least two legally distinct persons or entities; and (2) that the agreement imposed an unreasonable restraint on trade. Id. at 220-21.

A corporation and its wholly-owned subsidiary are not capable of conspiring in violation of § 1 of the Sherman Act. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 766-77 (1984). In Copperweld, the Supreme Court specifically declined to decide whether a parent corporation may conspire "with an affiliated corporation it does not completely own." Id. at 767. However, this court has used the factors articulated in Copperweld to find related entities incapable of conspiring in restraint of trade. See, e.g., Oksanen v. Page Memorial Hosp., 945 F.2d 696, 703-05 (4th Cir. 1991) (in banc) (examining "the substance, rather than the form, of the relationship"

3

and the degree of control exercised by hospital's Board of Trustees to find hospital and its medical staff incapable of conspiring); Advanced Health-Care Servs., Inc. v. Radford Community Hosp., 910 F.2d 139, 146 (4th Cir. 1990) (holding two wholly-owned subsidiaries of the same parent corporation are legally incapable of conspiring).

After examining the relationship between the Defendants as alleged in Zachair's complaint, we find that Zachair failed to allege concerted action by separate legal entities within the meaning of the Sherman Act. In its complaint Zachair alleged that "Defendant, John Driggs, controls the business affairs of defendants, The Driggs Corporation, Southern Maryland Sand and Gravel Corporation ["SMSGC"], Washington Executive Airpark, Inc. and Cecil Sand & Gravel, Inc. ["CSGI"]." (JA 11). It further alleged that Driggs controls SMSGC and CSGI, and that SMSGC and the Driggs Corporation control and operate the sand and gravel mining operation that Driggs formerly owned "through WEALP." (JA 13). In addition, the complaint states that WEALP continued to operate the airport and sand and gravel mine "through Airpark, SMSGC, and Driggs Corp." following WEALP's bankruptcy. (JA 17).

Although Zachair's complaint fails to articulate the precise business relationship among the various corporate Defendants, one thing is clear; the plain language of the complaint alleges that the corporate Defendants were all controlled and/or owned by Driggs. Hence, we find that under the standards set forth in Copperweld, Oksanen, and Advanced Health Care Services, Zachair's own allegations show that the Defendants are related entities incapable of restraining trade within the meaning of the Sherman Act. See Oksanen , 945 F.2d at 703; Advanced Health Care Servs., 910 F.2d at 146.

As an alternative theory, Zachair claims that the corporate Defendants conspired with Jaffe and Shapiro to prevent Zachair from entering the sand and gravel business. However, Zachair's complaint merely alleges that Jaffe and Shapiro attended the foreclosure sale at Driggs' request with the intention of providing Driggs with an excuse to challenge the sale. We find that this sole allegation fails to provide sufficient factual support for Zachair's conclusory claim that Jaffe and Shapiro conspired with the other Defendants to prevent Zachair from entering the sand and gravel mining industry. See Estate Const.

4

Co., 14 F.3d at 221. Nowhere does the complaint make allegations of communications, meetings, or any other means through which one might infer that Jaffe and Shapiro knowingly participated in an alleged scheme to prevent Zachair from operating a sand and gravel mine. See id. Thus, we agree with the district court that the allegations concerning Jaffe and Shapiro's presence at the foreclosure sale failed to allege a conspiracy under § 1 of the Sherman Act.

Zachair next contends that the district court erred in dismissing its § 1 claim with prejudice, thereby denying it an opportunity to amend its complaint. A district court's decision to dismiss an action with prejudice is reviewed for abuse of discretion. See Andes v. Versant Corp., 788 F.2d 1033, 1037 (4th Cir. 1986).

Zachair never moved for leave to amend its complaint and thus is foreclosed from arguing on appeal that the district court improperly denied leave to amend. See Thurston v. United States, 810 F.2d 438, 444 (4th Cir. 1987) (noting that questions not raised and properly pre-served will not be noticed on appeal). Despite its failure to move for leave to amend, Zachair alleges that under Fed. R. Civ. P. 15(a) it has the right to amend its unanswered complaint once as a matter of course.**2** However, amendment following a Rule 12(b)(6) dismissal is not per-mitted as a matter of right under Rule 15(a). See Sachs v. Snider, 631 F.2d 351, 351-52 (4th Cir. 1980); but see Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). Thus, Zachair's failure to move for leave to amend its complaint precludes appellate review of its claim that it was improperly denied leave to amend.

The district court dismissed Zachair's federal antitrust claims with prejudice based on its determination that Zachair failed to suggest how it might cure the defects in its complaint. Zachair's sole proffer to the district court was that an amended complaint would not allege that Driggs owned all the Defendant corporations. This proposed amendment, however, would not upset the district court's ultimate

_____

**2** Rule 15(a) provides in relevant part, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." A motion to dismiss does not qualify as a responsive pleading for purposes of this rule. See Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1068 n.1 (4th Cir. 1993).

5

finding that Driggs controlled the business affairs of all the Defendant corporations. As discussed above, Driggs' control over the other Defendants is the relevant factor behind our determination that Driggs and the various corporate Defendants constituted one entity incapable of conspiring under § 1 of the Sherman Act. Therefore, even if the complaint alleged that Driggs did not own all the Defendant corporations, the complaint would still fail to allege a claim under § 1. Accordingly, we find that the district court did not abuse its discretion in dismissing Zachair's antitrust claims with prejudice based on its finding that Zachair failed to suggest how it would cure the defects in its complaint. See Schuylkill Energy Resources v. PP & L, 113 F.3d 405, 418-19 (3d Cir.), cert. denied, 66 U.S.L.W. 3178 (U.S., Nov. 10, 1997) (No. 97-387) (holding that court need not permit amendment following 12(b)(6)n dismissal if proposed amendments will not cure defects of original complaint).

We therefore affirm the district court order dismissing Zachair's antitrust claims with prejudice.

AFFIRMED

6