**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEON R. ROUSE,
               *Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF
STATE; JOHN NEGROPONTE; THOMAS
HUBBARD; JOHN CAUFIELD; MARTHA
SARDINAS; PAUL BOYD; JOSEPH
BRACKEN,
               *Defendants-Appellees.*

No. 06-15967

D.C. No.
CV-05-00620-SPK

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, District Judge, Presiding

Argued and Submitted
September 12, 2008—San Francisco, California

Filed November 24, 2008
Amended May 22, 2009

Before: Diarmuid F. O'Scannlain, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Kari E. Hong, Law Offices of Kari E. Hong, Oakland, California, argued the cause for the plaintiff-appellant and filed the briefs.

Derrick K. Watson, Assistant United States Attorney, Honolulu, Hawaii, argued the cause for the defendants-appellees; Lawrence L. Tong, Assistant United States Attorney, Honolulu, Hawaii, filed the brief; Edward H. Kubo, Jr., United States Attorney, District of Hawaii; Jeremy M. Weinberg, Brian J. Egan, and Shawn M. Pompian, United States Department of State, Office of the Legal Adviser, Washington, D.C., were on the brief.

**ORDER**

I

The opinion filed in this case on November 24, 2008, is amended as follows:

At page 15723 of the slip opinion, line 23, after the sentence concluding < accuracy and access claims. > delete the remainder of the language in that Part and replace with < Our discussion, however, is limited to his accuracy claims. Because Rouse concedes that he received a copy of his full embassy file, his access claims are moot.[1]

---

[1]"[P]articular violations of the [Privacy] Act [are linked] to particular remedies in a specific and detailed manner." *Cell. Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1158 (9th Cir. 1978). With respect to suits for access violations, the only remedy available is for the court to "enjoin

We review the district court's dismissal of Rouse's claims de novo, *see Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008), accepting "all material allegations of the complaint" as true and construing "all reasonable inferences" in favor of the nonmoving party, *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). >

At page 15727 of the slip opinion, line 4, delete the two sentences and footnotes following the sentence concluding with < § 652E. >

At page 15727 of the slip opinion, line 9, delete < Having decided that the statute of limitations with respect to Rouse's "accuracy" claims is not jurisdictional, we > and replace with < We >.

At pages 15728-30 delete the entirety of subpart C.

At page 15731, line 2, delete < Even if the complaint were not time barred, Rouse's claims would fail on the merits. As we lack jurisdiction over his access claim, we consider only Rouse's accuracy claims.[2] > and replace with < Having been assured of our jurisdiction, we decline to decide whether equitable tolling is warranted on the facts of this case. Instead, we proceed to the merits. >

---

the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(3)(A); *see Thurston v. United States*, 810 F.2d 438, 447 (4th Cir. 1987). When a party, such as Rouse, has already received a copy of the requested records, we cannot afford him any further relief. Other courts have held that dismissal for mootness is appropriate in such circumstances, even where the records were not delivered in a timely fashion, *see, e.g.*, *Lovell v. Alderete*, 630 F.2d 428, 430-31 (5th Cir. 1980), and we have so held in the analogous FOIA context, *see, e.g.*, *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986).

[2]These are listed in Rouse's complaint as his First, Second, Fourth, and Fifth Causes of Action.

At page 15734, line 15, delete < No amendment would be able to cure either the statute of limitations violation,[3] the lack of causation, or the fact that Department regulations do not provide Rouse with a cause of action. > and replace with < No amendment would be able to cure either Rouse's inability to establish causation as a matter of law or the fact that Department regulations do not provide him with a cause of action.>

## II

The panel has unanimously voted to deny the petition for rehearing and the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a United States citizen may state a claim against the U.S. Department of State under the Privacy Act for damages arising from his imprisonment in a foreign country.

---

[3]For example, no amendment can explain how Rouse could have diligently preserved his rights in light of the fact that he filed an action with the UNHRC, but failed timely to file his Privacy Act complaint in federal court.

I

A

1

Leon Rouse is a citizen of the United States. On October 4, 1995, he was arrested in the Philippines when police entered his hotel room and found him and another individual, Godfrey Domingo, undressed. Domingo signed an affidavit stating he was a minor and that he and Rouse had engaged in sexual relations. Though Domingo later disavowed the affidavit, Rouse was charged under Philippine law with violating the "Special Protection of Children Against Child Abuse, Exploitation and Discrimination Act." The trial court ignored Domingo's repudiation and convicted Rouse, relying on the original affidavit, testimony indicating Rouse had engaged in consensual sex with a twenty-year-old male who "look[ed] like a minor," and the fact that Domingo and Rouse were found undressed together. Rouse continued to challenge his conviction in Philippine courts, but was sentenced to over ten years imprisonment on January 12, 1998. After eight years, he was released for medical reasons and deported to the United States.

2

On January 30, 1996, during Rouse's trial, consular officials from the United States Embassy in Manila (the "Embassy") filed letters with the trial court, expressing concerns with evidentiary issues. The letters were accompanied by a warning that failure to respond would result in referral to the Philippine Ministry of Justice. The record does not appear to contain evidence of either a response from the judge or a referral by the Embassy.

Embassy officials raised Rouse's case with local officials, and the Ambassador himself broached the subject with a Phil-

ippine legislator. The Ambassador, however, did not think the matter merited the attention of the Philippine president. Consular officers also visited Rouse at least nineteen times during his confinement, communicated with him by telephone, and assisted in providing him with access to medical care.

3

Over the course of his confinement, Rouse executed numerous Privacy Act waivers permitting the Department of State (the "Department") to disclose information about his case to third parties. On several occasions, the Department responded to inquiries from private organizations and members of Congress without mentioning its doubts as to the propriety of Rouse's arrest and incarceration or its efforts to obtain his release. The Department also initially refused to release information to certain individuals or groups. Rouse asserts that he had signed Privacy Act waivers covering these parties and that the failure to disclose the records constituted willful and intentional misrepresentations on the part of the Department. The Government maintains that at worst it was "confused about the status of Mr. Rouse's waivers."

4

In "late 1999," Rouse asked the Department for a copy of any files which had been kept on him. While it appears the Department did not immediately provide a copy, it complied with this request by September 2000. Documents Rouse alleged to be missing from his file were later made available to him via a Freedom of Information Act ("FOIA") request.

5

Rouse filed a petition with the United Nations Human Rights Committee ("UNHRC") on June 10, 2002, under the Optional Protocol to the International Covenant on Civil and Political Rights. On July 25, 2005, the UNHRC issued its

views that Rouse had been improperly imprisoned on a number of evidentiary and procedural grounds.

B

Just short of two years following his return to the United States, Rouse filed a pro se complaint in the United States District Court for the District of Hawaii, seeking over nine million dollars in damages. *See* 5 U.S.C. § 552a(g)(5) (allowing a Privacy Act action to be filed "in the district in which the complainant resides").[1] He alleged that the Department violated the Privacy Act, 5 U.S.C. § 552a, by willfully and intentionally failing to maintain and to disseminate records regarding his case with the appropriate level of accuracy, relevance, timeliness, and completeness. As Rouse maintained that his arrest, indictment, and trial were fraught with procedural and evidentiary defects, he asserted that the Department's actions deprived him of the benefits of diplomatic and third-party efforts to secure his freedom.[2]

The district court granted the Department's motion to dismiss, determining that Rouse's claims "would fail on the merits because of a lack of causation," the Privacy Act did not afford Rouse a remedy, and Rouse's complaint was "probably" barred by the applicable statute of limitations.[3] This timely appeal followed.

---

[1]Rouse's only claims are under the Privacy Act. He "specifically disclaim[ed] any attempt to assert a claim under the Federal Tort Claims Act."

[2]Specifically, Rouse alleged that the Department deliberately maintained, used, and disseminated inaccurate records which in turn denied him: 1) "a fair determination to his entitlement to [the Department's] exhaustive protective services"; 2) "a fair determination to his right to have and control the release of information about his case/situation" via Privacy Act waivers; 3) "ready access to his embassy records"; 4) "a fair determination to his entitlement to receive regularly scheduled [consular] visits"; and 5) "his right to U.S. Embassy assistance in knowing what rights [he] had a just claim to as well as what assistance and aid the U.S. Embassy should provide him."

[3]Rouse initially named the Embassy and various individuals as defendants. Because the Privacy Act only permits suits against an "agency," *see*

## II

**[1]** The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. 5 U.S.C. § 552a note. It provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements" of the Act. *Doe v. Chao*, 540 U.S. 614, 618 (2004).

Broadly speaking, there are two types of Privacy Act claims: "accuracy" claims and "access" claims. Accuracy claims arise under two different provisions of the Act. The first requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." *See* 5 U.S.C. § 552a(e)(5). The second mandates that "prior to disseminating any record about an individual to any person other than an agency . . . [it must] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." *Id.* § 552a(e)(6). Congress has provided for civil remedies for violation of these provisions. *See id.* § 552a(g)(1)(C) (creating a cause of action when an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which

5 U.S.C. § 552a(g)(1), and does not apply to individual defendants, *see Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1340 (9th Cir. 1987), the district court dismissed the claims against the individual defendants and substituted the Department of State for the Embassy.

is adverse to the individual"); *id.* § 552a(g)(1)(D) (creating a cause of action where an agency "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual"). If a court determines that an agency has violated these provisions in a manner that was "intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of actual damages sustained by the individual." *Id.* § 552a(g)(4).

Access claims, on the other hand, arise under a different provision, *id.* § 552a(d)(1) (requiring that agencies provide an individual "access to his record" "upon request"), and can likewise be enforced via civil action, *id.* § 552a(g)(1)(B) (creating a cause of action when an agency "refuses to comply with an individual request under subsection (d)(1)").

Rouse brings both accuracy and access claims. Our discussion, however, is limited to his accuracy claims. Because Rouse concedes that he received a copy of his full embassy file, his access claims are moot.[4]

We review the district court's dismissal of Rouse's claims de novo, *see Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008), accepting "all material allegations of the complaint" as true and construing "all reasonable infer-

---

[4]"[P]articular violations of the [Privacy] Act [are linked] to particular remedies in a specific and detailed manner." *Cell. Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1158 (9th Cir. 1978). With respect to suits for access violations, the only remedy available is for the court to "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(3)(A); *see Thurston v. United States*, 810 F.2d 438, 447 (4th Cir.1987). When a party, such as Rouse, has already received a copy of the requested records, we cannot afford him any further relief. Other courts have held that dismissal for mootness is appropriate in such circumstances, even where the records were not delivered in a timely fashion, *see, e.g.*, *Lovell v. Alderete*, 630 F.2d 428, 430-31 (5th Cir. 1980), and we have so held in the analogous FOIA context, *see, e.g.*, *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986).

ences" in favor of the nonmoving party, *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### III

**[2]** We first consider whether Rouse's complaint was time-barred. The Privacy Act requires plaintiffs to bring suit within "two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5). Even if his complaint was filed outside the two-year period, Rouse asserts that the statute should be equitably tolled to account for his imprisonment in a foreign country. We address each question in turn, reviewing de novo "the question of when a cause of action accrues [under the Privacy Act] and whether [such] a claim is barred by the statute of limitations." *See Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir. 2006).

### A

**[3]** Initially, we must determine whether Rouse's complaint was filed within two years of the date his cause of action allegedly arose. We have held that a cause of action arises under the Privacy Act when the plaintiff "knows or has reason to know of the alleged violation." *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990).

**[4]** Rouse "concedes that he was aware of many of the acts and omissions underlying the violations of the Privacy Act during the course of his imprisonment." The record bears this out. By 1998, Rouse allegedly "began to realize that the Embassy personnel were deliberately manipulating the existence and content of his [Privacy Act waivers]." At the very latest, Rouse would have been aware of the basis for his most recent allegation against the Department when he received his "complete" file pursuant to a FOIA request in early 2002. Accordingly, when Rouse's complaint was filed on September 27, 2005, it was filed more than two years after he knew or had reason to know of the alleged violations.

B

**[5]** Before proceeding further, we must decide whether § 552a(g)(5) operates as a statute of limitations or as a jurisdictional bar. If it is the former, the traditional defenses of "waiver, estoppel, and equitable tolling" apply. *United States v. Locke*, 471 U.S. 84, 94 n.10 (1985). If it is the latter, such defenses are inapplicable, and we lack subject matter jurisdiction over the case entirely. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

For many years, it was commonplace for courts to determine that time limits in statutes permitting suits against the government were jurisdictional in nature. *See, e.g.*, *Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 225 (D.C. Cir. 1984). Such statutes were viewed as conditions to waivers of sovereign immunity and were thus construed narrowly. *See Block v. North Dakota*, 461 U.S. 273, 287 (1983). Indeed, at least one of our sister circuits determined that § 552a(g)(5) was jurisdictional. *See Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987). In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), however, the Supreme Court announced a "general rule" that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95-96. The Court reasoned that while waivers of sovereign immunity had to be "unequivocally expressed," once Congress made such waiver, applying "the rule of equitable tolling . . . to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." *Id.* at 95. Congress, the Court ruled, is presumed to legislate against the backdrop of private litigation, a backdrop which includes equitable tolling. *See id.*; *cf. United States v. Texas*, 507 U.S. 529, 534 (1993) (noting a "presumption favoring the retention of long-established and familiar principles, except when a

statutory purpose to the contrary is evident" (internal quotation marks and citation omitted)).**⁵**

The Supreme Court clarified its position in *United States v. Brockamp*, 519 U.S. 347 (1997). Before deciding whether *Irwin*'s general presumption in favor of equitable tolling had been rebutted, the Supreme Court assumed, "for argument's sake, that a tax refund suit and a private suit for restitution are *sufficiently similar* to warrant" application of the presumption. *Id.* at 350 (emphasis added). In other words, for *Irwin*'s presumption to apply, the underlying cause of action must be "sufficiently similar" to a traditional cause of action between private parties.

1

**[6]** The D.C. Circuit applied this methodology in *Chung v. U.S. Department of Justice*, 333 F.3d 273 (D.C. Cir. 2003), to hold that § 552a(g)(5) was not categorically jurisdictional. *See id.* at 277 (stating that for *Irwin* to apply, "the type of litigation at issue must not be so peculiarly governmental that there is no basis for assuming customary ground rules apply"). To ensure the presumption the Supreme Court established in *Irwin* received its proper weight, however, the court noted that this inquiry "must be conducted at a fairly high level of generality." *Id.* ("[T]he question we ask, therefore, is not whether the elements of, and remedies available in, the action against the Government mimic those of a private claim, but whether the injury to be redressed is of a type familiar to private litigation.").

---

**⁵**Despite *Irwin*, *Diliberti* does not appear to have been directly overruled. We note that at least two other circuits (one in an unpublished disposition) have since ruled that § 552a(g)(5) is jurisdictional. *See Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002); *Weber v. Henderson*, 33 F. App'x 610, 611 (3d Cir. 2002). Both simply cite *Diliberti*, and neither appear to have considered the implications of *Irwin*.

**[7]** We agree with the D.C. Circuit's analysis in *Chung*. Here, Rouse claims that he was harmed by the Department's allegedly willful failure to disseminate and to maintain accurate records about the status of his case.[6] Taking the allegations in the complaint as true, we must assume that the Department was willfully misrepresenting information to and about Rouse. We are satisfied that these claims are sufficiently similar to traditional tort actions such as misrepresentation and false light to warrant the application of *Irwin*'s rebuttable presumption. *Cf.* Restatement (Second) of Torts § 525 (1977); *id.* § 532; *id.* § 652E.

2

**[8]** We must next ask the question: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" *Brockamp*, 519 U.S. at 350. In other words, has the *Irwin* presumption been rebutted? The government contends that Congress "has already effectively allowed for equitable tolling" by including a "built in" exception to the statute of limitations. *United States v. Beggerly*, 524 U.S. 38, 48 (1998). That exception applies to situations

> where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5). While this language does cut against the presumption, as the D.C. Circuit noted in *Chung*, it does not defeat it. *See Chung*, 333 F.3d at 278-79. The Supreme

---

[6]These are listed in Rouse's complaint as his First, Second, Fourth, and Fifth Causes of Action.

Court has only found the *Irwin* presumption overcome when dealing with statutes containing "detail[ed], . . . technical language" and "explicit list[s] of exceptions," *Brockamp*, 519 U.S. at 352; circumstances where equitable tolling "could create serious administrative problems," *id.*; areas of law where the running of a defined statute of limitations is of "special importance," *Beggerly*, 524 U.S. at 49; or statutes the Court previously interpreted as jurisdictional in nature, *see John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 755 (2008).

**[9]** No such circumstances, nor any others that might militate against tolling, exist in this case. Accordingly, we conclude that the *Irwin* presumption has not been rebutted.

IV

Having been assured of our jurisdiction, we decline to decide whether equitable tolling is warranted on the facts of this case. Instead, we proceed to the merits. In order to state a claim under the accuracy provisions of the Privacy Act, an individual must show "1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages." *Rose*, 905 F.2d at 1259; *Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir. 1986) (noting that § 552a(g)(1)(C) "requires a causal connection between the allegedly erroneous agency record and an adverse determination made against the individual.");[7] *see also* 5 U.S.C. § 552a(g)(4) (noting that in actions under § 552a(g)(1)(C) or (D), damages are only available for injuries incurred "as a result of" alleged violations).

---

[7]*Rose* and *Hewitt* explicitly referenced § 552a(g)(1)(C). However, there is no reason § 552a(g)(1)(D) would require any less of a causal connection.

A

Because the district court relied on a causation analysis to dismiss Rouse's claims on the merits, we move first to the second *Rose* prong. The gravamen of Rouse's theory of causation is that the Department willfully and intentionally failed to keep, to maintain, and to disseminate accurate records about his case. He contends that if the Department had kept, maintained, and disseminated accurate records about his case, the Department (or a third party) would have been able to file diplomatic or other protests with the Philippine government. If these protests had been filed, Rouse would have been released from prison. The resulting prolonged imprisonment caused Rouse extreme emotional distress and other nonpecuniary harms.

[10] We agree with the Department's counsel that Rouse's chain of inferences "stretches any notion of proximate cause beyond the breaking point." Regardless of whether or not the records were accurately maintained and disseminated, it is pure speculation that the Department would review them and decide to pursue additional diplomatic protests. It is speculation upon speculation then to assume that if the Department or third parties decided to protest further, such protest would have ensured Rouse's early release. Indeed, such claims are belied by the record itself, which demonstrates that official Embassy protests in Rouse's case were unavailing. Thus, the district court did not err when it dismissed the case for "lack of causation."[8]

---

[8]Because we are satisfied that Rouse is unable to demonstrate the requisite causal link between the asserted violation and his alleged injuries, we need not decide whether the nonpecuniary emotional harms he alleges constitute "actual damages" under the Privacy Act. *See* 5 U.S.C. § 552a(g)(4)(A).

B

Rouse's error is compounded by his belief he was entitled to further diplomatic efforts. Such claims are wholly outside the scope of the Privacy Act. Rouse bases this assumption on Department regulations and the Foreign Affairs Manual. *See, e.g.*, 22 C.F.R. § 71.6 (requiring Department officials to "extend every possible aid and assistance within their power to distressed American citizens"); 7 Foreign Aff. Manual § 426.1(b) ("If the legal and human rights of U.S. citizens and nationals arrested abroad are to be adequately protected, [the Department] must be prepared to protest substantiated violations of those rights [including] impressing on the host government that the U.S. Government . . . will not tolerate a violation of [its citizens] rights.").

In the first place, many of Rouse's claims of misrepresentation are based on records that include opinions and judgments as to the status of his case. Such records are not actionable under the Privacy Act. *See Hewitt*, 794 F.2d at 1379 (determining that characterizations of an employee's performance on a proficiency report were not appropriate grounds for a Privacy Act claim because "interpretation of facts is properly consigned to the professional judgment of the agency official").

**[11]** More significantly, we have found nothing in these regulations which indicates that they create a private right of action, much less one enforceable in court through the Privacy Act. Rouse must demonstrate that a federal *statute* vests him with such a right. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").[9] This he does not do.

_____

[9]Even if there were a cause of action available under these regulations, the Department acted properly. Where formal protest is warranted, the Foreign Affairs Manual notes that "the level at which the protest is made and the method are normally left to the post's discretion." 7 Foreign Aff. Manual § 426.3. In this case, the Embassy exercised its discretion and protested Rouse's treatment to the trial court and several Philippine officials.

Accordingly, the district court did not err in holding that the Privacy Act does not afford a remedy for the harms Rouse alleges.

V

Finally, Rouse contends that as he was litigating pro se in the district court, it was error to dismiss his claims without providing him the opportunity to amend his complaint. Rouse is correct that " '[d]ismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

[12] For the reasons discussed above, any attempt to amend would be futile in this case. No amendment would be able to cure either Rouse's inability to establish causation as a matter of law or the fact that Department regulations do not provide him with a cause of action. Accordingly, the district court did not err in declining to provide Rouse the opportunity to amend his complaint.

VI

Based on the foregoing, the decision of the district court is

**AFFIRMED**.